J-S62007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                               :        PENNSYLVANIA
                               :
              v.               :
                               :
                               :
CLIFFORD WILSON                :
                               :
         Appellant             :   No. 1509 WDA 2018

Appeal from the Judgment of Sentence Entered October 16, 2018
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0013116-2016

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, P.J.:          **FILED FEBRUARY 11, 2020**

Clifford Wilson appeals from his judgment of sentence entered on May 14, 2018, by the Court of Common Pleas of Allegheny County for possession of a controlled substance with intent to deliver ("PWID"), illegal possession of firearms, driving an unregistered vehicle in violation of 75 Pa.C.S.A. § 1301(a) and related offenses. We reverse Appellant's conviction for driving an unregistered vehicle but affirm his judgment of sentence in all other respects.

On the evening of April 1, 2016, Detective Mark Goob, Detective Scott Love, Detective Louis Schweitzer and Detective Michael Coleman (collectively "Detectives") of the City of Pittsburgh Police Department were conducting undercover surveillance of a house for which they had received complaints of

suspected drug activity.[1] They observed Appellant drive up to the house in a BMW. Appellant exited the car, entered the house, and approximately three to five minutes later, returned to the BMW and drove off.

The Detectives followed Appellant in their unmarked police car. After getting directly behind the BMW, Detective Love, who was driving, noticed that the BMW's license plate did not have a registration sticker affixed to it. The Detectives pulled Appellant over.

Detective Goob, who was a rear passenger on the right side of the police car, saw Appellant sit up in his seat, turn his shoulders to the right and start to reach around to the rear of his person. Detective Goob quickly approached the passenger side of the BMW and saw Appellant's right hand inside the rear of his pants. Appellant removed his hand from his pants and with his left hand, gave Detective Schweitzer, who had approached the BMW on the driver's side, his license.

Detective Love, who had remained in the police car "for maybe a few seconds longer," approached the BMW. N.T. Suppression Hearing, 7/21/17, at 27. Detective Goob immediately informed Detective Love that Appellant's hand had been inside the back of his pants. Concerned that Appellant may have hidden a weapon there, Detective Love asked Appellant to get out of the BMW and Appellant complied.

_____

[1] Appellant notes that there was no testimony regarding the first names of Detectives Schweitzer and Coleman at the suppression hearing. However, Detectives Schweitzer and Coleman did testify as to their first names at Appellant's trial and Appellant does not dispute the accuracy of those names.

Detective Love conducted a frisk of Appellant. During the frisk, Detective Love patted down Appellant's buttocks and felt a package the size of a golf ball in the rear waistband of Appellant's underwear. He believed the package to be crack cocaine and handcuffed Appellant. After Detective Goob cut the package out of Appellant's underwear with his pocketknife, the Detectives discovered that the package actually held fourteen grams of compressed powder cocaine.

When the Detectives informed Appellant that he was going to jail and the BMW would be inventoried, Appellant admitted there was a gun under the front seat of the car. Appellant told the Detectives he did not have a permit for the gun as it belonged to his girlfriend.

Appellant was charged with person not to possess firearms, carrying a firearm without a license, PWID, possession of a controlled substance, possession of drug paraphernalia, and the summary offense of driving an unregistered vehicle. Prior to trial, Appellant filed a motion to suppress the cocaine and the gun, which the trial court denied following a hearing. He also filed a motion to sever the count of person not to possess firearms, which the court granted.

Appellant proceeded to a jury trial, with the person not to possess firearms count and the driving an unregistered vehicle count to be decided by the court. The jury convicted Appellant of all counts before it, and the court found Appellant guilty of person not to possess firearms and the summary count of driving an unregistered vehicle.

The court sentenced Appellant to a term of imprisonment of 60 to 120 months for the person not to possess firearms count and a consecutive term of imprisonment of 30 to 60 months for the PWID count. The court also imposed a term of probation of three years for the count of carrying a firearm without a license. Appellant filed post-sentence motions, which the court denied, and he now appeals his judgment of sentence to this Court.

Appellant first contends that the trial court erred by denying his motion to suppress because he was subjected to an unlawful search when Detective Love frisked him for weapons. This claim fails.

When reviewing a trial court's denial of a motion to suppress, this Court is limited to determining whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those findings are correct. *See Commonwealth v. Baldwin*, 147 A.3d 1200, 1202 (Pa. Super. 2016). Where the record supports the trial court's factual findings, we may only reverse if the court's legal conclusions are erroneous. *See id.*

Anytime a police officer has reasonable suspicion to believe a violation of the Motor Vehicle Code is occurring or has occurred, the officer may initiate an investigatory stop of the vehicle in question. *See Commonwealth v. Mack*, 953 A.2d 587, 589 (Pa. Super. 2008). An officer may ask the driver to step out of a lawfully stopped vehicle as a matter of right. *See id.*

During the course of a valid investigatory stop, if an officer also has a reasonable suspicion that the detained individual may be armed and presently dangerous to the officer or others, the officer may then conduct a frisk of the

individual's outer garments for weapons. **See Commonwealth v. Wilson**, 927 A.2d 279, 284 (Pa. Super. 2007). In order to justify such a frisk, the officer must be able to point to "specific and articulable facts indicating the person [he] intend[s] to frisk may be armed and dangerous." **Commonwealth v. Cooper**, 994 A.2d 589, 593 (Pa. Super. 2010) (citations omitted). "The existence of reasonable suspicion to frisk an individual must be judged in light of the totality of the circumstances confronting the police officer." **Commonwealth v. Taylor**, 771 A.2d 1261, 1269 (Pa. 2001). In doing so, we must give "due consideration to the reasonable inferences that the officer can draw from the facts in light of his experience, while disregarding any unparticularized suspicion or hunch." **Wilson**, 927 A.2d at 284.

Here, there is no dispute that the BMW Appellant was driving was subject to a valid stop given that the BMW's license plate did not have a registration sticker affixed to it, which was required by law at the time Appellant was pulled over. **See** Appellant's Brief at 15 ("the trial court correctly found that the traffic stop was lawful"). Rather, Appellant argues Detective Love did not have the requisite reasonable suspicion that Appellant was armed and dangerous to justify frisking him for weapons. We disagree and instead conclude that, given the totality of the circumstances surrounding Appellant's traffic stop, the trial court did not err in determining that Detective Love had a reasonable suspicion that Appellant was armed and dangerous.

The record below shows that the Detectives saw Appellant enter and quickly exit a house that was under surveillance for suspected drug activity.

They then pulled Appellant over at approximately 10:40 in the evening. Detective Goob testified at the suppression hearing that, upon being pulled over, Appellant sat up, turned his shoulders to the right and appeared to be reaching behind his person. Based on these movements, Detective Goob quickly approached the vehicle as he was concerned Appellant may have been recovering or hiding a weapon.

Once Detective Goob reached the passenger window of the car, he testified that he saw Appellant's hand "actually inside the rear of his pants. Inside his pants." N.T. Suppression Hearing, 7/21/17, at 10. He also testified that, in his twenty-two years of experience as a police officer, he had recovered drugs and guns from the area in which Appellant was reaching. *See id.* at 9-10.

Similarly, Detective Love testified that he had found guns and drugs in rear waistbands over the course of his twenty years as a police officer. *See id.* at 41-42. He testified that once Detective Goob warned him that Appellant's hand had been inside the rear of his pants, he was concerned that Appellant had placed a weapon there and frisked him on that basis. *See id.*

Under the totality of these circumstances, most significantly the fact that Appellant was seen with his hand inside the back of his pants, we agree with the trial court that Detective Love could reasonably have inferred that his safety and that of the other Detectives was in jeopardy. We have previously held that similar movements indicative of concealing a weapon, when observed during the course of a lawful traffic stop, provided a reasonable basis

to conduct a frisk for weapons. *See, e.g., Commonwealth v. Parker*, 957 A.2d 311 (Pa. Super. 2008) (finding that officer was justified in frisking appellant after he pulled appellant over for a Motor Vehicle Code violation at night, appellant could not produce identification and officer saw appellant reaching down and dipping his shoulders from side to side); *Commonwealth v. Simmons*, 17 A.3d 399 (Pa. Super. 2011) (finding officer had reasonable suspicion to frisk appellant after pulling him over at night in high crime area for a Motor Vehicle Code violation and observing appellant making a movement toward the floor and then across his chest toward the left area of his jacket).

Appellant argues, however, that the trial court erred in relying on his furtive movements to support its finding of reasonable suspicion because his movements were just as consistent with the innocent behavior of looking for and retrieving his identification, registration and insurance.[2] As the Commonwealth points out, this argument is far from convincing in light of the fact that Detective Goob actually saw Appellant's hand **inside** the back of his pants. While it is certainly true that drivers may keep their identification cards in their back pocket, it is not typical nor sensible for drivers to keep those cards lodged inside the back of their pants. Detectives Goob and Love were

---

[2] Appellant argues that the trial court improperly labeled his movements inside the car as "furtive" because Detective Goob did not use that particular word when testifying about them. However, the very nature of the movements described by Detective Goob, under the circumstances in which those movements were observed, make them furtive, regardless of whether that specific word was used.

justified in fearing that something more nefarious was afoot when Goob saw Appellant reaching inside his pants.

Appellant also takes issue with the trial court's determination that Detective Love had reasonable suspicion to frisk him because he was alone in the car and thereby outnumbered by the officers, and because the Detectives never saw a gun or any bulges in Appellant's clothing that would be indicative of a weapon. In rejecting a similar argument, this Court stated:

> First, we disagree with the suggestion that the officer has to see a weapon in the vehicle. An overt threat by the suspect or clear showing of a weapon is not required for a frisk. It is well-established that the officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.
>
> Additionally, we disagree that the fact that [the suspect] was alone in the car made the frisk unreasonable. Again, it is the totality of the circumstances and the facts which give rise to common sense concerns for safety which dictate the legitimacy of the frisk. The fact that an officer may be outnumbered is certainly a factor to be considered when determining whether an officer's safety is at risk, but the reverse scenario does not amount to a lesser chance that the suspect is not armed.

*Mack*, 953 A.2d at 591 (internal quotations and citations omitted)

Here, although Appellant was alone when he was pulled over and the Detectives did not see a gun or any bulges on Appellant's person, the fact remains that the totality of the circumstances confronting Detective Love gave rise to a reasonable suspicion that Appellant was armed and dangerous.

Appellant was seen entering and exiting a suspected drug house, he was pulled over late at night, and he made suspicious movements, including sticking his hand inside the rear of his pants, which could have reasonably led Detective Love to believe his and the other Detectives' safety was at risk. Our case law requires this Court to be mindful of common sense concerns, and give preference to the safety of officers during an encounter where circumstances indicate an individual may have a weapon. **See id.** at 590. Those circumstances are present here. As such, the trial court properly denied Appellant's motion to suppress.[3]

In his next claim, Appellant argues there was insufficient evidence to support his conviction for the summary offense of driving an unregistered vehicle. The Commonwealth agrees with Appellant, as did the trial court in its opinion. The court found, and the Commonwealth concedes, that the Commonwealth failed to produce evidence at Appellant's trial that the vehicle

---

[3] Appellant also tries to use this Court's decision in **Commonwealth v. Reppert**, 814 A.2d 1196 (Pa. Super. 2002), to support his argument that his furtive movements did not support a finding of reasonable suspicion. **Reppert** involved a situation where an officer detained a passenger of a car after the officer had already concluded the traffic stop for which he had originally stopped the car. We have stated that "**Reppert** stands for the proposition that pre-stop furtive movements, by themselves, may not be used to justify an investigative detention and search commenced after the conclusion of a valid traffic stop where the totality of the circumstances has established that the furtive movements did not raise immediate concern for the safety of the officer who undertook the initial vehicle detention." **Simmons**, 17 A.3d at 405. Clearly, this is not what happened in the instant case. Detective Love frisked Appellant very shortly after the stop, **see** N.T. Suppression Hearing, 7/21/17, at 29, because Appellant's furtive movements prompted his concern that Appellant had a weapon.

Appellant was driving was unregistered. Appellant, on the other hand, offered evidence demonstrating that the vehicle was in fact registered. Accordingly, we agree with the trial court that Appellant is entitled to have his conviction for driving an unregistered vehicle reversed. As the trial court noted, though, it did not impose any penalty on that conviction and therefore there is no need for a remand for resentencing. ***See Commonwealth v. Thur***, 906 A.2d 552, 569-70 (Pa. Super. 2008) (holding that no remand was necessary when trial court's overall sentencing scheme has not been disturbed by appellate decision).

Appellant's conviction for driving an unregistered vehicle is reversed. The remainder of Appellant's judgment of sentence is affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2020